UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK A BUSTETTER,

      Plaintiff,

v.                                        Case No.  8:12-cv-1236-T-24 TGW

ARMOR CORRECTIONAL HEALTH
SERVICES, INC., ET AL.,

      Defendants.

_____/

## ORDER

      This cause comes before the Court on Defendants' motions to dismiss.  (Doc. No. 7, 8, 9,

10, 15).  Plaintiff opposes the motions.  (Doc. No. 18, 19, 20, 21).

## I.  Standard of Review

      In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct.

1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

at 1965 (citation omitted).  While the Court must assume that all of the allegations in the

complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. Background

Plaintiff alleges the following in his amended complaint (Doc. No. 4): Plaintiff was incarcerated in Sarasota County Jail in May and June of 2009 for a non-violent traffic offense. When he was taken into custody at the jail, Plaintiff informed the medical staff of his medical conditions and current medications. Plaintiff's medical conditions included: Type I diabetes (for which he was insulin dependent and taking two types of insulin three to five times per day), a prior heart attack, and blindness in one eye.

While he was incarcerated, Nurse Carstens gave Plaintiff the medication Avandia, which is used for Type II diabetes, not Type I diabetes. Carstens gave Plaintiff Avandia without speaking to Plaintiff about his current medications or informing him that he was being given this medication. Plaintiff contends that the nurses who administered his medications as a matter of policy would not tell him what medications he was being given, and if he refused any of the medications, none of his medications would be given to him. Had Plaintiff been informed that he was being given Avandia, he would have refused it because it is used to treat Type II diabetes and because of its side-effects (which include increased risk for adverse cardiac events to patients with a history of heart problems and increased risk of macular edema and peripheral edema). Additionally, Plaintiff had taken Avandia in the past and had stopped taking it because

of his adverse reactions to the medication.

Also while he was in the jail, Plaintiff's blood sugar levels were only measured twice a day and he was given insulin only twice a day, despite the fact that he normally tested his blood sugar levels and took insulin up to five times per day.  As a result of the limited blood sugar testing and the lack of insulin, Plaintiff's blood sugar levels were consistently too high the entire time he was in jail, which caused damage to his health.

Additionally, Dr. Dunn and Nurse Carstens prescribed and supervised the administration of excess levels of statins to Plaintiff.  These excess levels of statins also caused damage to Plaintiff's health.

After seven weeks of taking Avandia, living with high blood sugar levels, and being administered excess levels of statins, Plaintiff suffered a heart attack that led to his hospitalization and surgery to implant a cardioverter defibrillator.  Plaintiff contends that the heart attack and subsequent cardiac implant were caused by the medical negligence and deliberate indifference of the jail and the medical providers.  Furthermore, after his release from jail, Plaintiff developed macular edema that has significantly reduced the vision in his non-blind eye, peripheral edema, foot infections, and a diabetic foot that will cause him to walk with a limp for the rest of his life.  Plaintiff contends that these medical conditions resulted from the medical treatment that he received while in the Sarasota County jail.

On June 1, 2012, Plaintiff filed the instant lawsuit against six defendants: (1) the Sarasota County Sheriff's Department, (2) Sarasota County Sheriff Thomas Knight, (3) Armor Correctional Health Services, Inc. ("Armor"), a corporation that contracted with the Sheriff and jail to provide medical services to prisoners in the jail, (4) Michael Edward Dunn, M.D., who

was hired by Armor and was a doctor that provided medical services to Plaintiff while he was in jail, (5) Sonya Kay Carstens, ARNP, who was hired by Armor and was a nurse that provided medical services to Plaintiff while he was in jail, and (6) Diamond Pharmacy Services ("Diamond"), which provided the medications that were prescribed to Plaintiff while he was in jail.

Plaintiff asserts three counts in his amended complaint.  Count I is a state law medical malpractice claim against Armor, Carstens, Dunn, the Sheriff, and the Sarasota County Sheriff's Department.  Count II is a negligence claim against Diamond.  Count III is a § 1983 claim alleging deliberate indifference to Plaintiff's need for medical treatment against Armor, Carstens, Dunn, the Sheriff, and the Sarasota County Sheriff's Department.[1]

## III.  Motions to Dismiss

All of the defendants have filed a motion to dismiss.  Accordingly, the Court will address each motion.

### A.  Sheriff Thomas Knight and the Sarasota County Sheriff's Department

Sheriff Knight and the Sarasota County Sheriff's Department ("SCSD") jointly filed a motion to dismiss.  With regard to the medical malpractice and § 1983 claims against the SCSD, the SCSD argues that the claims against it must be dismissed, because the SCSD is not a proper party to the action.  Instead, the SCSD argues that Sheriff Knight is the proper party defendant for such claims.  In response, Plaintiff concedes that dismissal of the claims against the SCSD is warranted, and he voluntarily dismisses these claims.  (Doc. No. 18, p. 3).  Accordingly, the

---

[1]Plaintiff identifies Diamond within his § 1983 claim, but he states in his response to Diamond's motion to dismiss that he is not asserting a § 1983 claim against Diamond.  (Doc. No. 19, ¶ 2).

4

SCSD is no longer a party to this action.

Sheriff Knight moves to dismiss the medical malpractice claim asserted against him in Count I.  Specifically, Knight argues that dismissal is warranted, because Plaintiff did not comply with the mandatory notice requirements imposed by Florida Statute § 768.28(6)(a), which is a prerequisite to instituting a Florida tort action against a governmental entity in Florida.[2]  Plaintiff responds that he has generally alleged performance of all conditions precedent in paragraph 27 of his amended complaint, and as such, his allegation of compliance is sufficient and must be accepted as true when this Court rules on the motion to dismiss.  See Ritter v. City of Jacksonville, 2007 WL 2298347, at *3 (M.D. Fla. Aug. 7, 2007)(stating that a general averment that all conditions precedent have been performed is sufficient); Smith v. Rainey, 747 F. Supp.2d 1327, 1337 (M.D. Fla. 2010)(citations omitted).

The Court agrees with Plaintiff that his allegation of performance of all conditions precedent is sufficient and must be accepted as true when ruling on this motion.  If Knight would like to challenge the veracity of Plaintiff's allegation of performance of all conditions precedent, Knight may do so via a motion for summary judgment.  However, at this stage in the proceedings, the Court must accept Plaintiff's allegation as true and deny Knight's motion to dismiss.

---

[2]Section 768.28(6)(a) provides, in relevant part, that "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing."  Section 768.28(6)(b) provides that "the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action."

### B.  Armor Correctional Health Services, Inc.

Armor moves to dismiss the medical malpractice and § 1983 claims asserted against it. With regards to the medical malpractice claim, Armor argues that dismissal is warranted because the two-year limitations period set forth in Florida Statute § 95.11(4)(b) has expired.  Section 95.11(4)(b) provides the following:

> An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred *or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence*; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued . . . . An "action for medical malpractice" is defined as a claim in tort . . . for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care.

Fla. Stat. § 95.11(4)(b) (emphasis added).

Armor argues that because Plaintiff *received* the allegedly negligent medical treatment while in jail in May and June of 2009, the limitations period expired by June of 2011.  Therefore, because Plaintiff did not file this lawsuit until June 1, 2012, Armor contends that the medical malpractice claim is barred by the two-year limitations period.

The flaw in Armor's argument, however, is that the amended complaint does not identify when Plaintiff *discovered* the alleged medical malpractice.  Plaintiff alleges in the amended complaint that he was not informed what medicine he received while he was in jail, and as such, there is a question of fact regarding when the limitations period began.  As such, based on the allegations in the amended complaint, it is not clear whether the limitations period expired prior to the filing of this lawsuit, and therefore, Armor's motion to dismiss this claim must be denied. If Armor wishes to pursue its statute of limitations argument, it can file a motion for summary

6

judgment on the issue.

Next, Armor argues that the § 1983 claim asserted against it should be dismissed.  Armor makes two arguments in support of this contention.  First, Armor argues that the § 1983 claim should be dismissed because Plaintiff does not identify a specific federal right that was violated.  This argument has no merit, as Plaintiff has alleged that Armor was deliberately indifferent to his serious medical needs, which is a violation of the Eighth Amendment.  See Benson v. Gordon County, Georgia, 479 Fed. Appx. 315, 319 (11th Cir. 2012).

Next, Armor argues that Plaintiff has not alleged a policy or custom of Armor's that led to the violation of his constitutional rights.  Plaintiff responds that the following allegations in the amended complaint are the policies and customs of Armor that led to the violation of his constitutional rights: (1) the nurses who administered Plaintiff's medications, as a matter of policy, would not tell him what medications he was being given; (2) according to the nurses, there was a policy that if he refused to take any of his medications, he would be given no medications at all; (3) the measurement of his blood sugar levels and administration of insulin to treat his diabetes was limited to twice per day; (4) he was given excess levels of statins; and (5) when he was released from jail, he was not informed that he had been given Avandia, nor was he informed of Avandia's side-effects.[3]

At this stage in the proceedings, the Court concludes that Plaintiff has sufficiently alleged one or more policies and/or customs of Armor that may have led to his medical injuries.  As

---

[3]The Court notes that the last three of the five policies and/or customs listed above were not *specifically* identified in the amended complaint as "policies" or "customs."  However, the first two were specifically identified as policies, and as such, those are sufficient allegations to support Plaintiff's § 1983 claim.

such, Armor's motion to dismiss the § 1983 claim must be denied.

### C.  Sonya Carstens, ARNP

Carstens  moves to dismiss the medical malpractice and § 1983 claims asserted against her.  With regards to the medical malpractice claim, Carstens argues that dismissal is warranted because the two-year limitations period set forth in Florida Statute § 95.11(4)(b) has expired. For the same reasons set forth above with regards to Armor's argument on this issue, the Court rejects this argument.

Next, Carstens argues that the § 1983 claim asserted against her should be dismissed. Carstens makes two arguments in support of this contention.  First, Carstens argues that the § 1983 claim should be dismissed because Plaintiff does not identify a specific federal right that was violated.  For the same reasons set forth above with regards to Armor's argument on this issue, the Court rejects this argument.

Next, Carstens cites the various elements and considerations that are implicated in § 1983 claims.  Thereafter, she makes the vague argument that Plaintiff "does not allege fact[s] that would rise to a claim appropriate to be brought pursuant to 42 U.S.C. § 1983," and that his allegations equate to "medical negligence."  The Court construes her argument to be that Plaintiff has not alleged sufficiently gross negligence that could support a § 1983 claim. However, Plaintiff has alleged that: (1) he was given medication that was used to treat Type II diabetes despite the fact that he had Type I diabetes and had a history of heart problems; (2) he was not told what medications he was being given or the side-effects of the medications; (3) measurement of his blood sugar levels and administration of insulin to treat his diabetes was limited to twice per day, despite his complaints that his blood sugar needed to be checked more

8

often and given insulin accordingly; and (4) he was given excess levels of statins.  Carstens has

not cited any case law showing that these specific allegations of inadequate medical treatment

are insufficient to support a § 1983 claim.  As such, the Court denies her motion to dismiss this

claim.

### D.  Michael Edward Dunn, M.D.

Dunn  moves to dismiss the medical malpractice and § 1983 claims asserted against him.

In the amended complaint, Plaintiff alleges that Dunn was hired by Armor as the supervising

physician for medical services provided at the jail and that he was the supervising physician for

Carstens.  Additionally, Plaintiff alleges that Dunn directly provided medical treatment to him,

including prescribing and supervising the administration of excess levels of statins.

With regards to the medical malpractice claim, Dunn argues that the claim should be

dismissed, because: (1) Plaintiff fails to separately identify the conduct of Dunn (and instead,

Plaintiff simply lumps all of the defendants' conduct together); and (2) Plaintiff does not specify

whether he is asserting a claim of direct or vicarious liability against Dunn.  The Court rejects

these arguments.  For the most part, the allegations in the amended complaint identify who took

what actions.[4]  Furthermore, in his response to the motion to dismiss, Plaintiff clarifies to Dunn

what was obvious to the Court—Plaintiff is asserting both direct and vicarious theories of

liability against Dunn for the medical malpractice claim.  Accordingly, the Court denies Dunn's

motion to dismiss this claim.

Next, Dunn argues that the § 1983 claim should be dismissed for the same reasons he

---

[4]The Court acknowledges that Plaintiff fails to identify who measured his blood sugar
and administered his insulin.

argues that the medical malpractice claim should be dismissed—failure to separately identify the conduct of Dunn and failure to specify whether he is asserting a claim of direct or vicarious liability against Dunn.  Again, these arguments have no merit, as the Court has concluded that for the most part, the allegations in the amended complaint identify who took what actions.  Furthermore, Plaintiff's § 1983 claim against Dunn cannot be based on vicarious liability.[5]  See Williams v. Limestone County, Alabama, 198 Fed. Appx. 893, 896 (11th Cir. 2006).  Accordingly, the Court denies Dunn's motion to dismiss this claim.

In the alternative to his motion to dismiss, Dunn asks that Plaintiff be required to provide a more definite statement.  However, as explained above, a more definite statement is not warranted.  Therefore, Dunn's alternative motion for a more definite statement is denied.

**E.  Diamond Pharmacy Services**

Plaintiff asserts a negligence claim against Diamond based on the following allegations:  Diamond provided medications that were prescribed to Plaintiff while he was in the jail.  Specifically, Carstens ordered that Plaintiff be given Avandia, and Diamond provided the Avandia that was given to Plaintiff.  Plaintiff alleges that Diamond was notified that Plaintiff was a Type I diabetic, and Diamond did not make any inquiries as to Plaintiff's medical history or notify the medical staff of the ineffectiveness of Avandia for Type I diabetes.  Furthermore, Plaintiff alleges that Diamond did not advise him or the medical staff of the dangers and risks of

_____

[5]Instead, Plaintiff will have to show a casual link between Dunn's acts or omissions and the deliberate indifference to Plaintiff's serious medical needs.  See Williams, 198 Fed. Appx. at 896.  "The causal connection may be proven by showing [Dunn] (1) was personally involved in the acts or omissions which resulted in the constitutional deprivation; (2) established a policy or custom that resulted in the constitutional deprivation; or (3) breached a duty imposed by state or local law."  Id.

prescribing Avandia to a Type I diabetic.  Finally, Plaintiff alleges that Diamond owed a duty of

care to inform him of the material facts regarding Avandia's effectiveness and risks and that

Diamond breached this duty, which proximately caused his heart attack, peripheral edema, and

macular edema.

Diamond moves to dismiss the negligence claim on two grounds.  First Diamond argues

that this claim is barred by the applicable two-year limitations period set forth in Florida Statute

§ 95.11(4)(a).  Section 95.11(4)(a) provides a two-year limitations period for the following

conduct:

> An action for professional malpractice, other than medical
> malpractice, whether founded on contract or tort; provided that the
> period of limitations shall run from the time the cause of action is
> discovered or should have been discovered with the exercise of due
> diligence.  However, the limitation of actions herein for professional
> malpractice shall be limited to persons in privity with the
> professional.

Fla. Stat. § 95.11(4)(a).  Diamond argues that because Plaintiff *received* the Avandia while in jail

in May and June of 2009, the limitations period expired by June of 2011.  Therefore, because

Plaintiff did not file this lawsuit until June 1, 2012, Diamond contends that this claim is barred

by the two-year limitations period.

The flaw in Diamond's argument, however, is that assuming that § 95.11(4)(a) provides

the applicable limitations period,[6] the two-year limitations period does not begin to run until the

cause of action is discovered or should have been discovered with the exercise of due diligence.

Plaintiff does not identify in the amended complaint when he *discovered* that he was given

---

[6]Plaintiff argues that the four-year limitations period for negligence claims, which is set
forth in Florida Statute 95.11(3)(a), applies.  The Court need not decide which statutory
provision controls in order to rule on the instant motion to dismiss.

11

Avandia.  Instead, Plaintiff alleges in the amended complaint that while he was in jail, he was

not informed what medicine he received, and as such, there is a question of fact regarding when

the limitations period began.  Therefore, based on the allegations in the amended complaint, it is

not clear whether the limitations period set forth in § 95.11(4)(a) expired prior to the filing of

this lawsuit.  Accordingly, the Court rejects Diamond's argument that dismissal is warranted

based on the limitations period.

Diamond's second ground for dismissal is that Diamond, as a pharmacy, did not owe a

duty to Plaintiff, and as a result, Plaintiff's negligence claim fails.  Whether Diamond owed a

duty to Plaintiff is a question of law for the Court to determine.  See Estate of Johnson ex rel.

Johnson v. Badger Acquisition of Tampa LLC, 983 So. 2d 1175, 1180 (Fla. 2d DCA 2008).  As

explained by the Court in Badger Acquisition:

> The duty element of negligence focuses on whether the defendant's
> conduct foreseeably created a broader 'zone of risk' that poses a
> general threat of harm to others.  Thus, where a defendant's conduct
> creates a *foreseeable zone of risk,* the law generally will recognize a
> duty placed upon defendant either to lessen the risk or see that
> sufficient precautions are taken to protect others from the harm that
> the risk poses.

Id. (internal citations and quotation marks omitted).

There is some conflict in the case law regarding whether a pharmacy has a duty to warn

the end-user of medications about the risks of the medications that the pharmacy dispenses.  As

such, a brief review of the case law on this issue is warranted.

In McLeod v. W.S. Merrell Co., Division of Richardson-Merrell, Inc., 174 So. 2d 736

(Fla. 1965), an issue before the Florida Supreme Court was whether a pharmacy could be held

strictly liable for its failure to warn of the possible dangers of using the drug it dispensed in

accordance with a doctor's prescription.  See id. at 738.  While there was not a negligence claim

asserted in McLeod, the court stated that a pharmacist "that sells a prescription warrants that (1)

he will compound the drug prescribed; (2) *he has used due and proper care in filling the*

*prescription (failure of which might also give rise to an action in negligence)*; (3) the proper

methods were used in the compounding process; [and] (4) the drug has not been infected with

some adulterating foreign substance."  Id. at 739 (emphasis added).

Thereafter, in Pysz v. Henry's Drug Store, 457 So. 2d 561 (Fla. 4th DCA 1984), an issue

before the court was whether the pharmacy had a duty to warn the customer of the dangerous and

addictive propensities of the prescription Quaaludes that the pharmacy dispensed.  See id. at 561-

62.  The Pysz court concluded that the pharmacy did not have a duty to warn the plaintiff-

appellant, stating:

> Appellant argues that a pharmacist has greater knowledge of the
> propensity of drugs than that of the physician.  Although this may be
> factually true in some instances, it is the physician who has the duty
> to know the drug that he is prescribing and to properly monitor the
> patient.  Therefore, we must affirm the dismissal of appellant's
> complaint.  However, we limit our affirmance to the facts of this case
> since we recognize that a factual situation could exist which would
> support an action for negligence against a druggist who has lawfully
> filled a prescription issued by a licensed physician.

Id. at 562.

Thereafter, in Johnson v. Walgreen Co., 675 So. 2d 1036 (Fla. 1st DCA 1996), the issue

before the court was whether the pharmacy that filled the decedent's several prescriptions had a

duty to warn the decedent about the potentially lethal drug interactions that the combination of

prescriptions might cause (and did, in fact, cause).  See id. at 1037.  The court, following Pysz,

concluded that the pharmacy did not have a duty to warn the decedent.  See id. at 1038.

Thereafter, in <u>Estate of Sharp v. Omnicare, Inc.</u>, 879 So. 2d 34 (Fla. 5th DCA 2004), the issue was whether the plaintiff sufficiently alleged a negligence claim against Omnicare, an entity providing consulting pharmacy services to the nursing home in which Sharp was a resident.  <u>See</u> <u>id.</u> at 36.  The plaintiff alleged, among other things, that Omnicare failed to review Sharp's drug regimen on a monthly basis and failed to determine from her records that her drug regimen was not effectively treating her medical conditions.  <u>See</u> <u>id.</u>  After reviewing the plaintiff's allegations, the court concluded that it could not discern a duty that Omnicare owed to Sharp, stating:

> In <u>McLeod</u> the Florida Supreme Court sharply limited the duties that a pharmacist owes to his or her customers.  The high court chose not to make a pharmacist liable for duties that are ordinarily owed by a physician or caretaker to the patient.  As the <u>Pysz</u> court noted, "[I]t is the physician who has the duty to know the drug that he is prescribing and to properly monitor the patient."  In the present case the Estate seeks to hold the nursing home's pharmacists liable for the administration of medications that were provided to Ms. Sharp by the nursing home, or that were prescribed by her physicians. In light of <u>McLeod</u>, we can detect no breaches of duty owed by the pharmacist to Ms. Sharp.

<u>Id.</u> (internal citation omitted).

Around the same time that <u>Estate of Sharp</u> was decided by Florida's Fifth District Court of Appeal, Florida's First District Court of Appeal issued a decision that appears to conflict with the prior case law on a pharmacy's duty to warn.  In <u>Dee v. Wal-Mart Stores, Inc.</u>, 878 So. 2d 426, 427 (Fla. 1st DCA 2004), the plaintiff asserted a negligence claim against a pharmacy that filled the decedent's prescription for a Duragesic patch that she was given by her doctor after she had a Cesarean section.  However, the prescription did not have a time limit on it, and the decedent filled it four months later in order to treat pain for a fractured ankle.  <u>See</u> <u>id.</u>  The

14

plaintiff alleged in his complaint that Duragesic patches contain "fentanyl," which can lead to death if the person using it is not on a fentanyl regimen, and the decedent died as a result of the fentanyl.  See id.  The court concluded that the plaintiff sufficiently alleged a claim against the pharmacy for negligence, stating:

> A pharmacy must use due and proper care in filling a prescription. When a pharmacy fills a prescription which is unreasonable on its face, even though it is lawful as written, it may breach this duty of care. It is alleged that the prescription for this Duragesic patch, without a time limit for filling or using the prescription, renders the prescription unreasonable on its face. It is alleged that this Duragesic patch, if used by one not on a fentanyl regimen, will likely cause hypoventilation resulting in death. It is alleged that a pharmacist viewing this prescription which is more than four months old would reasonably conclude that the patient is opioid-naive. The pharmacist should warn of this danger and/or inquire of the physician whether the prescription should be filled for this patient. It is alleged that the pharmacist did neither. These allegations of the amended complaint state a cause of action in negligence.

Id. at 427-28 (internal citation omitted).

Thereafter, Florida's Fourth District Court of Appeal issued a decision that followed Florida's First District Court of Appeal's decision in Dee.  In Powers v. Thobhani, 903 So. 2d 275, 276 (Fla. 4th DCA 2005), the decedent had been seeing her doctor for six months for neck and back pain and was given six different types of drugs during that period.   The doctor repeatedly prescribed these drugs days before the preceding prescriptions should have been depleted and prescribed the drugs in combinations.  See id. at 276-77.

The plaintiff filed suit against two pharmacies that filled the doctor's prescriptions for the decedent, alleging that their negligence in filling the prescriptions led to the decedent's overdose and death.  See id.  The trial court dismissed the complaint, and the appellate court reversed.  See id. at 278.  The appellate court noted that the Florida Supreme Court in McLeod "held that a

15

cause of action for negligence might arise when a pharmacist does not use proper care in filling

the prescription, although the [McLeod] court did not clarify what factual circumstances the

pharmacist's duty encompasses." Id.  Additionally, the appellate court compared its case to both

Dee and McLeod, stating:

> Dee resembles the case at bar because in both cases the prescriptions
> involved narcotics which could easily lead to overdose and both
> prescriptions eventually led to the user's death.  Thus, McLeod and
> Dee confirm that factual circumstances exist under which negligence
> liability can be imposed on a pharmacy for failing to use due and
> proper care in filling prescriptions, even if the prescription is filled in
> accordance with the physician's instruction.

Id.  The appellate court noted that there is a strong policy basis to support the argument that

pharmacies have a "duty to warn customers of the risks inherent in filling repeated and

unreasonable prescriptions with potentially fatal consequences."  Id. at 279.

The appellate court concluded that the trial court erred in dismissing the complaint, but

the appellate court also noted that its decision conflicted with Johnson and Estate of Sharp, so it

certified the conflict with the Florida Supreme Court.  See id. at 280.  The Florida Supreme

Court initially granted review, but it later declined to exercise jurisdiction because it determined

(without explanation) that there was no actual conflict.  See Your Druggist, Inc. v. Powers, 934

So. 2d 1182 (Fla. 2006).

Thereafter, in Layton v. Smithkline Beecham Corp., 2006 WL 2194498 (M.D. Fla. Aug.

2, 2006), this Court cited Johnson v. Walgreen Co. when it concluded that a negligence claim

against a pharmacy could not stand.  See id. at *2.  In Layton, the plaintiffs asserted a negligence

claim against a pharmacy for failing to warn the decedent of the risks associated with taking

Paxil.  See id.  In concluding that the plaintiffs could not assert a viable negligence claim against

the pharmacy, this Court stated that "a negligence cause of action against a pharmacist or pharmacy may not be premised on a duty to warn customers of potential adverse drug interactions nor of the dangerous propensities of a particular prescription drug.  See id. (citing Johnson, 675 So. 2d at 1037-38).

Thereafter, in Estate of Johnson v. Badger Acquisition of Tampa LLC, Florida's Second District Court of Appeal concluded that the entities providing consulting pharmacy services to the nursing home in which Johnson was a resident did not owe her a legal duty that could support a negligence claim, stating:

> [W]e appreciate that an alleged failure of the consultant pharmacist to advise the treating physician of issues with Mrs. Johnson's regimen may have been a missed opportunity to increase Mrs. Johnson's level of patient care.  However, this only becomes relevant to a discussion of a legal duty if we conclude the consultant pharmacist created or increased the risk to Mrs. Johnson.  A legal duty arises "whenever a human endeavor creates a generalized and foreseeable risk of harming others."  Allegations of a negligent omission to act do not create a duty for a party where the risk was put in place by another.

Badger Acquisition, 983 So. 2d at 1183-84 (internal citations omitted).  Additionally, the Badger Acquisition court distinguished Powers v. Thobhani, stating:

> In Powers the pharmacist interacted directly with the retail customer. In the case at bar, the record indicates that the consultant pharmacist did not interact with Mrs. Johnson but instead dealt only with the nursing home staff, treating physicians, and medical director.  In its brief, the Estate acknowledges that the consultant pharmacist did not interact directly with the nursing home residents.  The allegations in the present case are substantively different than the scenario described in Powers.

Id. at 1185.

Two of the three judges on the Badger Acquisition panel concurred specially with the

17

opinion.  One of the concurring judges stated that he was "not convinced that a consulting pharmacist can never be liable to a nursing home resident.  Depending on the conduct of a consulting pharmacist in relation to the provision of services or medications to a nursing home resident, the pharmacist may indeed have liability for harm suffered by the resident."  Id. at 1189 (Silberman, J., concurring).  However, that judge did not specify under what circumstance he could perceive liability being imposed on the pharmacist.

Finally, in Arrington v. Walgeen Co., 664 F. Supp.2d 1230 (M.D. Fla. 2009), this Court followed the Dee and Thobhani decisions to find that the plaintiff sufficiently stated a negligence claim against the pharmacy.  In Arrington, the decedent, Church, was given a prescription for a drug that Walgreens pharmacy filled with a generic version that was sulfa-based.  See id. at 1231.  The plaintiff alleged that Church was allergic to sulfa-based drugs and that Walgreens knew this.  See id.  The drug caused Church a severe allergic reaction and injuries.  See id. Walgreens moved to dismiss the complaint, and this Court denied the motion, stating:

> Walgreens would have this Court interpret a pharmacist's duty to use "due and proper care in filling the prescription" as being satisfied by a robotic compliance with the instructions of the prescribing physician.  In Walgreens' view, so long as the paperwork is in order, and so long as the drug going out the door matches the drug prescribed, the  pharmacist (and, by extension, Walgreens) cannot face liability. However, none of the cases cited by Walgreens go this far. And though the law in this area is far from settled, two Florida Courts of Appeal have rejected this contention.
>
> \*       \*       \*
>
> [T]he two Florida courts [Dee and Thobhani] that have addressed the question have held that a pharmacist's duty to use due and proper care in filling a prescription extends beyond simply following the prescribing physician's directions. In the instant case, accepting the allegations of the amended complaint as true, the defendant knew that Church was allergic to sulfa-based drugs and filled her prescription for such a drug without warning her or double-checking with her physician—similar to the defendant in Dee, who knew or should have

> known that the plaintiff in that case was likely unable to safely take
> the prescribed painkiller. Under these circumstances, the Court
> cannot rule as a matter of law that Walgreens did not act negligently
> in filling the prescription.

Id. at 1232, 1233.

Thus, as described above, the law in Florida is far from clear regarding the circumstances in which a pharmacy can be held liable for negligence when dispensing prescription medications. The allegations relating to Diamond in the amended complaint state that Plaintiff was prescribed Avandia and that Diamond provided Avandia to jail medical staff for Plaintiff, even though Diamond was notified by Carstens that Plaintiff was a Type I diabetic, not a Type II diabetic. However, Plaintiff does not allege in the amended complaint that he had any direct contact with Diamond, which, in this Court's opinion, weakens his negligence claim. See Estate of Sharp, 879 So. 2d at 36 (no allegations made that would support the conclusion that the consulting pharmacy owed a duty to the nursing home resident); Badger Acquisition, 983 So. 2d at 1185 (same).

Furthermore, this Court concludes that the instant case is distinguishable from Dee, Thobhani, and Arrington, the three cases in which the courts allowed the negligence claims to stand against the pharmacies. For example, there were obvious flaws with the prescriptions in the Dee and Thobhani cases that could (and did) result in serious harm (death).

In Dee, the prescription for the Duragesic patch contained an obvious flaw that should have prevented the pharmacy from filling it without further inquiry or warnings, as the prescription did not contain a time limit on it and it was given to the pharmacy to be filled four months after it was written. See Dee, 878 So. 2d at 427. The plaintiff in Dee had alleged that if

a person that uses a Duragesic patch is not on a fentanyl regimen, there is a serious risk of death. See id.  Given that the prescription did not have a time limit on it and was submitted to be filled four months after it was written, the court concluded that the pharmacist had a duty to inquire if the person taking it was on a fentanyl regimen and/or warn of the risk of death if the Duragesic patch was used without being on a fentanyl regimen. See id. at 427-28.

Likewise, in Thobhani, there was an obvious flaw in the fact that the decedent had been given six different types of narcotics prescriptions that were being renewed before the prior prescriptions should have been depleted and were being prescribed in potentially lethal combinations.  See Thobhani, 903 So. 2d at 276-77.  The Thobhani court focused on the fact that the case involved narcotics that could easily lead to an overdose and that did in fact lead to the decedent's death.  See id. at 278.  The Thobhani court stated that there was a strong policy basis for requiring a pharmacy to warn the customer "of the risks inherent in filling repeated and unreasonable prescriptions with potentially fatal consequences."  Id. at 279.

Finally, in Arrington, the risk of harm to the decedent was created by how the pharmacy filled the prescription.  The pharmacy filled the prescription with a sulfa-based generic version of the medication that was prescribed, despite the fact that the pharmacy allegedly knew that the decedent was allergic to sulfa-based drugs.  See Arrington, 664 F. Supp.2d at 1231.  Thus, the risk to the decedent in Arrington was ***created*** by the pharmacy via the manner it filled the prescription.

Unlike the Dee, Thobhani, and Arrington cases, in which the courts allowed the negligence claims to stand, the alleged negligence claimed in the instant case is that Diamond should have informed Plaintiff and/or the jail medical staff of the material facts regarding: (1)

20

Avandia's ineffectiveness for Type I diabetes, and (2) the risks of taking Avandia (which include increased risk for adverse cardiac events to patients with a history of heart problems and increased risk of macular edema and peripheral edema) given Plaintiff's health problems (which include a previous heart attack and blindness in one eye).  However, none of the cases described above allow a negligence claim based on a pharmacy's failure to inform of the ineffectiveness of the medication dispensed.

Furthermore, the facts in the instant case do not involve the obvious and serious risks described in <u>Dee</u>, <u>Thobhani</u>, and <u>Arrington</u>.  In the instant case, Plaintiff was a Type I diabetic who was given medication for Type II diabetes.  This Court is not willing to impose a duty on a pharmacy to second guess a doctor's prescription if the prescription itself is not patently flawed or does not impose an obvious risk of death.  Instead, the patient's doctor is in the best position to select the appropriate medication for each patient's circumstances (after weighing the risks and benefits of the medication) and to monitor the effectiveness of the medication.  <u>See</u> <u>Estate of Sharp</u>, 879 So. 2d at 36; <u>Pysz</u>, 457 So. 2d at 562.

Additionally, the Court notes that there is no allegation in the amended complaint that Diamond was aware of Plaintiff's prior heart attack or that he was blind in one eye, such that Diamond should have been aware of the increased risk to Plaintiff of taking Avandia due to these health problems.  Therefore, because Plaintiff has not sufficiently alleged that Diamond knew of the increased risk to Plaintiff of taking Avandia due to his health problems, the Court cannot conclude that Diamond had a duty to warn of the risks.

Furthermore, even if Diamond had known of Plaintiff's medical history, it was still the doctor and his medical staff's responsibility to select the appropriate medication to treat Plaintiff

after weighing the risks and benefits of the selected medication.  Because it was the *selection* of

Avandia for Plaintiff by the medical staff that allegedly resulted in the harm to Plaintiff, the

Court concludes that Diamond did not create or increase the risk of harm to Plaintiff by filling

the Avandia prescription.  As such, this Court will not impose a duty on Diamond to warn

Plaintiff or the medical staff of the risks allegedly put in place by those that selected Avandia for

Plaintiff.[7]  See Badger Acquisition, 983 So. 2d at 1183-84; see also Pysz, 457 So. 2d at 562 (no

negligence for failing to warn of the risks associated with taking Quaaludes); Layton, 2006 WL

2194498, at *2 (no negligence for failing to warn of the risks associated with taking Paxil).

Therefore, based on the allegations in the amended complaint, the Court concludes that dismissal

of the negligence claim against Diamond is warranted.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Defendants Thomas Knight and Sarasota County Sheriff's Department's Motion

to Dismiss (Doc. No. 10) is **DENIED as to Knight.**  The Court notes that because

Plaintiff has conceded that voluntary dismissal of his claims against the SCSD is

warranted, the claims against the SCSD are dismissed without prejudice, and the

SCSD is no longer a party to this action.

(2)     Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss (Doc.

No. 8) is **DENIED**.

---

[7]Additionally, given that Plaintiff acknowledges that he had taken Avandia in the past and quit taking it because of adverse reactions, it is not clear from the allegations in the amended complaint that he was not aware of the risks associated with taking Avandia that he contends that Diamond should have warned of.

(3)      Defendant Sonya Kay Carstens' Motion to Dismiss (Doc. No. 9) is **DENIED**.

(4)      Defendant Michael Edward Dunn, M.D.'s Motion to Dismiss or for a More Definite Statement (Doc. No. 7) is **DENIED**.

(5)      Defendant Diamond Pharmacy Services' Motion to Dismiss (Doc. No. 15) is **GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, this 23rd day of January, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

23